BARNES, J.,
for the Court.
¶ 1. John Henry Moore was indicted for the deliberate design murder of his son-in-law, Virgie Cousins, Jr. At trial, Moore defended the charge on the grounds of self-defense and defense of others; the jury rejected these defenses but found Moore guilty of the lesser offense of manslaughter. The court sentenced Moore to serve a term of twenty years’ imprisonment, with twelve years suspended and three years’ post-release supervision, and ordered him to pay all costs associated with the case. Moore’s motion for a new trial was denied by the trial court. Aggrieved, Moore appeals to this Court challenging various rulings of the trial court which he claims deprived him of a fair trial. Finding no reversible error in the proceedings below, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. In the State’s case in chief, various neighbors of the deceased, Virgie Cousins, Jr. (“Cousins”), testified that on the evening of August 27, 2001, John Moore drove up to Cousins’s trailer. Moore’s wife, Ethel Lou, went into the trailer immediately, but Moore sat in his truck for approximately five to ten minutes. Moore then got out of the truck and proceeded to Cousins’s trailer; two witnesses described Moore’s approach, “like he was sneaking up.” While Cousins stood at his front door, with his left hand on the open storm door, Moore shot him with a 12-gauge shotgun. The neighbors in one trailer could not see Cousins’s right hand; however, a neighbor who had a different vantage point testified *836 that Cousins’s right hand was on the opposite door facing, and stated that he did not see anything in Cousins’s right hand. Two of the neighbors testified that Cousins was looking back into the trailer and did not turn around so as to see Moore’s approach.
¶ 3. The medics were called, but their efforts to revive Cousins failed. He was pronounced dead at the scene. Dr. Steven Hayne conducted an autopsy on Cousins’s body on August 28, 2001. He determined that Cousins died from a shotgun wound; over 200 pellets of shot struck Cousins’s abdomen, lungs, heart, aorta and abdominal organs, producing massive internal injuries. Dr. Hayne testified, with the aid of certain autopsy photographs, that the concentration of shot extended over the chest and that had Cousins been holding something in front of his body at the time he was shot, his forearms and hands would have borne shot pellets and his abdomen would have been partially shielded. Instead, Cousins’s forearms and hands were free of pellets, and his abdomen was covered with them.
¶ 4. Moore defended the charge on theories of self-defense and the defense of others, namely his daughter and granddaughter. Admitted into evidence was the statement Moore gave investigating officers on the night of the shooting; in it, Moore claimed:
I was in my camper, when my wife started screaming telling me what was going on. My wife was telling me that Virg[ie] had a gun holding my daughter and grand daughter hostage.
I carried my wife up to their trailer. When we got there, my -wife went in [the] trailer. Virgie came out [of the] trailer, and was on the third step “when he saw me in [the] yard.” He started unwrapping [a] towel or something in his hand, when I shot him, he ran back in the house.
I knew he had a gun, because they told me before I left home. I felt like I shot him before he shot me.
¶ 5. Various members of Moore’s family who were present at the trailer at the time of the shooting testified on Moore’s behalf. First, his granddaughter, Jasna Cousins, aged ten at the time of the shooting and twelve at the time of trial, testified that on the day of the shooting her father came home “in a mean, mean mood.” Jasna telephoned her mother, Dessie Cousins, who was at the home of Dessie’s parents, John and Ethel Lou Moore, and asked her to come home. Upon Dessie’s arrival, Cousins demanded to know where she had hidden his gun. Despite Dessie’s denials, Cousins found his pistol in thé trunk of her car where Dessie had hidden it a few days earlier. Cousins then went to his truck and appeared to Jasna to load the gun. Jasna told her mother to call the Moores, which she did. Cousins came back into the trailer with the gun and went into his bedroom. Although on the night of the shooting Jasna told an investigator with the sheriffs department that she thought her father had hidden the gun in his bedroom, at trial she testified that he brought the gun back out of the bedroom.[1] Shortly thereafter, Ethel Lou Moore came into the trailer and demanded of Cousins, “What are you doing to my daughter now?” He replied that “the only thing he was looking for was his gun.” Cousins started out of the trailer with an orange shirt[2] “wrapped *837 up ... in his hand on his chest”; “[i]t looked like something was in the orange shirt,” but Jasna did not know for sure. He was then shot by her grandfather, John Moore.
¶ 6. Next, Moore’s wife, Ethel Lou, testified that on the night of the shooting Des-sie telephoned and said, “Momma ... he done found that gun ... he’s fixing to kill me now.” Ethel called to her husband, and the two drove up to Cousins’s trailer “pretty fast.” When they arrived, John warned Ethel not to go in because she might get hurt. Ethel, however, jumped out of the truck and went inside the trailer. Cousins was “coming back from his bedroom ... walking fast in a rush.” When he came past, Ethel asked what he was doing to Dessie. Cousins replied, “All I want is my gun,” and rushed past holding “a shirt up like this when he passed by; and also when he c[a]me out [of] the room, he had something up like this.... It looked like he had something in it....” Ethel was looking for her daughter and grandchildren when the shot was fired. She saw Cousins “stumbling back up in the house from [outside].... ”
¶7. Moore’s daughter, Dessie, testified that on the day of the shooting, her husband, Cousins, came in the house “with a raging voice,” demanding to know where his gun was. When he found it hidden in her car, she telephoned her mother and said, “I believe he’s fixing to kill us ... he done found that gun.” When her parents arrived, her mother entered the trailer and asked Cousins if he was going to kill Des-sie. “It wasn’t long I seen my husband with something in his hand up toward his chest, and he was rushing toward the door.” Dessie “couldn’t see” what Cousins had in his hand but “the last thing” she saw him “with was the gun.” She “thought he ha[d] the gun wrapped up in that [sic] he had in his hand.” Dessie admitted, however, that after the shooting she did not see a gun lying on the floor, did not move a gun, and did not see anyone else move a gun.
¶ 8. On rebuttal, the State called Deputy Sheriff Brand Huffman who testified that he arrived at the trailer within three minutes of the first 911 call. Upon being informed of the possibility of a gun at the scene, he searched the trailer and found a gun on top of the dresser in the master bedroom. Through his testimony, exhibit S-42, a photograph of Deputy Huffman pointing to the top of a dresser, was introduced into evidence over defense objection. Deputy Huffman confirmed that the picture depicted his “pointing to the gun that I found on top of the dresser.”
¶ 9. Instructed as to murder, manslaughter and self-defense, the jury found Moore guilty of manslaughter. Following compilation and review of a pre-sentence report, the trial court sentenced Moore to twenty years imprisonment, with twelve years suspended and three years’ post-release supervision. On appeal, Moore challenges various rulings of the trial court which he claims deprived him of a fair trial. Specifically, Moore alleges (1) that the trial court erred in allowing the introduction of photos of the deceased; (2) the State’s medical expert was improperly allowed to testify outside of his realm of competency; (3) that the State’s closing argument was improper; and (4) that these alleged errors cumulatively denied him the right to a fair trial. We address each issue in turn.
ISSUES AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN ADMITTING VARI-
*838 OUS PHOTOGRAPHS OP THE DECEASED OVER MOORE’S OBJECTION.
¶ 10. Moore argues that his Sixth and Fourteenth Amendment rights to a fair trial were violated when certain photographs were introduced into evidence. Moore claims that the autopsy photographs had no probative value and were inflammatory, cumulative, and gruesome. Moore also argues that the photograph of Deputy Huffman pointing to the top of a dresser was not relevant and should have been excluded.
¶ 11. Photographs, like other evidence, are admitted at the discretion of the judge. “The discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.” Milano v. State, 790 So.2d 179, 191(¶ 56) (Miss.2001). As long as the photographs, although gruesome, serve some evidentiary purpose, the trial court does not commit an abuse of discretion in admitting them into evidence. Additionally, if the photographs “supplement or add clarity to the testimony,” no abuse of discretion is found. Id.
¶ 12. Having reviewed the photographs introduced at trial,[3] we find that the depictions of Cousins’s body were not so gruesome as to deny Moore a fair trial. All but two of the photographs were taken after the body had been cleansed and were not, therefore, overly gruesome. Of the two taken before cleansing, one photograph was taken at the scene of the crime and showed the location of the body; the other, while taken at the autopsy, displayed only a minimal amount of blood.
¶ 13. The autopsy photographs corroborated the testimony of Dr. Hayne as to the pattern of shot pellets on the torso of the deceased and the absence of shot from his arms, hands and fingers which would have been present had Cousins been holding some item between himself and Moore at the time of the shooting. Accordingly, the photos served a valid, if not crucial, evi-dentiary purpose in establishing whether Moore acted in self-defense. As to the allegation that certain photographs were cumulative, we note that the trial judge painstakingly reviewed each photograph to determine whether the image was duplicated elsewhere and excluded a number of photographs on that basis. We find that the photographs, while thoroughly depicting the pattern of shot, were not cumulative. Further, the photograph of Deputy Huffman pointing to the gun on the top of dresser corroborated his testimony as to the location at which he found a gun following the shooting. The location of the gun was relevant to refute Moore’s theory of defense of self or others.
¶ 14. We conclude that the trial judge did not abuse his discretion in admitting the challenged photographs and that their admission did not deny Moore a fair trial. This assignment of error is without merit.
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE PATHOLOGIST TO TESTIFY TO FACTUAL ISSUES BEYOND HIS COMPETENCY.
¶ 15. Moore claims that the trial judge allowed Dr. Hayne to testify to matters beyond his competency. He argues that it was error to allow Dr. Hayne to testify about the reason for the scar on the back of Cousins’s hand and whether he would expect to find pellets in the hands of *839 someone unwrapping an object from a shirt at the time of a shotgun blast.
¶ 16. The State emphasizes that Dr. Hayne has performed many autopsies upon individuals who died as a result of gunshot wounds and contends that the trial judge did not err in admitting his testimony regarding the expected shot pattern on a person who had his arm raised in front of his body at the time of a shotgun blast. We agree.
¶ 17. The relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused. Roberson v. State, 595 So.2d 1310, 1315 (Miss.1992). Rule 401 of the Mississippi Rules of Evidence defines “relevant evidence” as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Rule 702 provides that:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
¶ 18. Dr. Hayne, who performed the autopsy on Virgie Cousins’s body, had, at the time of trial, worked in the field of forensic pathology continually for almost thirty years and had conducted approximately 30,000 autopsies. He was asked where pellet wounds would be located on Cousins’s body had he been unwrapping a shirt from around his arm at the time he was shot. Based on his experience, Dr. Hayne gave his opinion that he “would expect to see pellets going through the shirt and the hands, forearm to the fingers [and] would also expect to see an area sparing over the chest or the abdomen. The areas toward the intermediate target of the shirt and the hands would be blocking the shot from striking his chest or abdomen.” Dr. Hayne then confirmed that there was no sparing on Cousins’s body so as to indicate that some intermediate target had blocked the shot. Since Moore’s theory was that he acted in defense of self or others, what Virgie Cousins was doing at the time he was shot was relevant to the jury’s decision. Whether or not Cousins was holding or reaching for a gun was a relevant fact in determining if Moore’s actions were justified. We conclude that Dr. Hayne was not asked to testify outside his area of expertise in discussing the pattern of shot wounds on Cousins’s torso, describing the marks which would have been present had Cousin been holding some item, such as a gun, between himself and Moore at the time of the shooting, and explaining that certain marks on the back of Cousins’s hands were healed scars rather than fresh gunshot wounds. Moore’s assignment of error is without merit.
III. WHETHER THE STATE’S CLOSING ARGUMENT WAS IMPROPER.
¶ 19. Moore contends that trial court committed reversible error in overruling his objection to the State’s closing argument wherein the district attorney stated to the jury, “Tail didn’t want to be here. That man put you here.” Moore contends that this statement prejudiced him by implying that he should not have been entitled to present a theory of self-defense.
*840 ¶ 20. The State argues that Moore did not preserve the issue for appeal as he failed to move for a mistrial. Moore correctly points out, however, that a motion for mistrial is only required where the court has sustained the objection. “The law of this State is quite clear that, in order to preserve an error of this nature for review on appeal, defense counsel must offer a mistrial motion after it is established that the evidence was, in fact, improper.” Jones v. State, 724 So.2d 1066, 1069(¶ 11) (Miss.Ct.App.1998) (emphasis added). In this case, the trial court did not sustain the objection to closing argument; therefore, the issue is preserved for appeal. In such an instance, the mere objection by defense counsel is sufficient to preserve the point on appeal. See Cox v. State, 813 So.2d 742, 750(¶27) (Miss.Ct.App.2001) (“The statement made by the prosecution during closing arguments was objected to by defense counsel, and was therefore properly preserved”).
¶ 21. While we agree with Moore that there is no valid reason for the comment made by the district attorney in closing, we find that it was not, in this case, prejudicial to the defense. The Mississippi Supreme Court stated in Sheppard v. State, 777 So.2d 659 (Miss.2000), that “[t]he standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.” Id. at 661. In making this determination, we must view the improper comment in context, taking into consideration the circumstances of the case. Haggerty v. Foster, 838 So.2d 948, 962(¶ 41) (Miss.2002). However, we also keep in mind that the trial court is in the best position to determine if irreparable harm resulted from the allegedly improper argument. Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709, 727(¶ 59) (Miss.2001). In the present case, we cannot find that the district attorney’s statement was so prejudicial as to result in Moore’s conviction. The jury was well instructed as to Moore’s theory of self-defense, and without more, we cannot find that the district attorney’s statements negated the effectiveness of the instructions given the jury. Moore’s assignment of error is without merit.
IV. WHETHER THE TRIAL COURT ERRED IN DENYING MOORE’S MOTION FOR A NEW TRIAL BASED UPON VARIOUS OBJECTIONS TIMELY MADE BY DEFENSE COUNSEL BUT OVERRULED.
¶ 22. Moore claims the circuit court judge erred in denying Moore’s motion for a new trial. In support, Moore again challenges the admission of the photographs, the scope of Dr. Hayne’s testimony and the State’s allegedly improper closing argument, in none of which has this Court found error. Moore additionally alleges that the trial court improperly allowed the State to offer the testimony of Deputy Huffman in rebuttal, evidence concerning Dessie’s complaint for divorce, questions regarding her sex life, and the use of a diagram of the mobile home. Moore argues that these alleged errors, if not reversible individually, constitute cumulative error.
¶ 23. The relevant question in this analysis is whether the cumulative effect of all errors committed during the trial deprived the defendant of a fundamentally fair and impartial trial. Where there is “no reversible error in any part ... there is no reversible error to the whole.” McFee v. State, 511 So.2d 130, 136 (Miss.1987). Moore does not demon *841 strate that the alleged errors are reversible when accumulated, and thus he does not meet his burden of proving that he was denied a fundamentally fair and impartial trial. A long list of “near errors” in a non-death penalty case in the determination of guilt does not equal reversible error. Forbes v. State, 771 So.2d 942, 955(¶ 51) (Miss.Ct.App.2000).
¶ 24. Apart from the claimed errors which we have previously rejected, Moore has cited no authority to support his contentions that the trial court’s rulings were erroneous. This Court has repeatedly stated that failure to cite authority may act as a procedural bar. See Simmons v. State, 805 So.2d 452, 487(¶ 90) (Miss.2001) (citing Williams v. State, 708 So.2d 1358, 1361(¶ 12) (Miss.1998)). While we will treat the remainder of Moore’s unsupported arguments as procedurally barred, we will address Moore’s primary contention that the court erred in allowing the rebuttal testimony of Deputy Huffman regarding the location at which he found a gun and in admitting the photograph (S-42) corroborating that testimony.
¶ 25. Moore contends that Deputy Huffman’s testimony should have been offered, if at all, in the State’s case in chief and that allowing him to testify on rebuttal allowed the State to have, in essence, two cases in chief. It is within the sound discretion of the trial court whether evidence is admitted as rebuttal evidence. Mills v. State, 813 So.2d 688, 691(¶ 11) (Miss.2002). A trial court’s decision will only be disturbed upon a showing of abuse of discretion. Mills, 813 So.2d at 691(¶ 11). Where there is doubt as to whether the evidence is properly case-in-chief or rebuttal evidence, a lower court should resolve the doubt in favor of reception in rebuttal if:
(1) its reception will not consume so much additional time as to give an undue weight in practical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially as well prepared to meet it by surre-buttal as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal.
McGaughy v. State, 742 So.2d 1091, 1094(¶ 12) (Miss.1999). Further, “[whether the testimony evidence is properly offered during the case-in-chief or as rebuttal evidence is not always clear. In gray areas, the trial judge must be given due discretion, especially when the defendant is permitted surrebuttal.” Id. at 1094(¶ 14).
¶ 26. In the present case, it was unclear whether the evidence should have been offered in the State’s case in chief. In her prior statement to the police, Jasna Cousins claimed that her father had hidden his gun in his bedroom prior to the shooting. Her statement claimed that when he came out of his bedroom, he was holding a sack of shells. The statement made no mention that Virgie Cousins was holding a gun. However, on cross-examination during Moore’s case in chief, Jasna Cousins testified that when her father left his room immediately prior to the shooting, he had the gun with him. The State called Deputy Huffman to the stand in rebuttal, offering that his testimony would show that the pistol was found atop a dresser in Virgie Cousins’s bedroom, thus rebutting the inference that Cousins had the gun on his person at the time he was killed. The trial court noted that whether the evidence was proper rebuttal evidence was “a very close question,” but allowed the State to call Deputy Huffman to the stand.
¶ 27. We find that the trial judge acted properly in resolving this question in favor *842 of allowing the State to present this evidence in rebuttal. Looking to the test espoused in McGaughy, we note first that Deputy Huffman’s testimony consumed a mere eight pages in a record of over 550 pages. Jasna Cousins’s testimony, in contrast, took up nearly fifty pages. Huffman’s rebuttal testimony did not consume so much time as to give it undue weight. Secondly, there is no evidence that Moore was unprepared to counter Huffman’s testimony in surrebuttal. Thirdly, at the close of the State’s rebuttal, Moore did not request the opportunity to present evidence in surrebuttal. Looking to these facts, we cannot say that the trial court abused its discretion in the instant case. Moore’s assignment of error is without merit.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF CHICKASAW COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWELVE YEARS SUSPENDED AND THREE YEARS’ POST-RELEASE SUPERVISION AND PAY $100 TO THE VICTIM’S COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CHICKASAW COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.

. At trial, Jasna was unsure when or where Cousins hid the gun; she admitted, however, that she did not think he had the gun when her grandfather arrived at the trailer. She also confirmed that after the shooting, the gun was not near her father’s body.

. Jasna had not mentioned an orange shirt on the night of the shooting. Instead, she told *837 the investigator that her father had a sack of shells which she believed he was going to put in his truck.

. Of the eleven autopsy photographs identified by Moore as being improperly admitted, four (S-8, S-9, S-10, and S — 18) were never admitted into evidence although the trial court had allowed them to be marked for identification purposes.