# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00641-COA

**JAMIE CARTELL PAYNE A/K/A JAMIE PAYNE**  **APPELLANT**
**A/K/A JAMIE C. PAYNE**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/25/2015 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF ROBBERY AND SENTENCED TO FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 08/02/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND WILSON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In March 2015, Jamie Payne was convicted by a jury in the Lamar County Circuit Court of robbery. He was sentenced to fifteen years in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Payne asserts that the trial court erred in denying his *Batson*[1] challenge against the State's peremptory strike of a member of the venire

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

absent a legal race-neutral reason stated during voir dire. Payne also asserts that the trial court erred in denying his motion for a mistrial based on the State's comment during closing arguments. Finding no error, we affirm.

**FACTS**

¶2. On June 15, 2010, the Hattiesburg Police Department was dispatched to Ross clothing store for a report of a robbery. The robbery victim was Merlene Breazeale, who had been walking to her car in Ross's parking lot when her purse was stolen off her arm. She was unable to identify who took her purse. Amanda Roberts witnessed the event. She testified that she saw a black male take Breazeale's purse and escape in a Ford Taurus. There were three other individuals in the car.

¶3. While on the phone with police, Roberts followed the vehicle to an apartment that the suspects entered. The suspects, Nanette Hathorn, Rodrique Watson, Chadwick Watson, and Payne, were all apprehended and placed in separate patrol units. During a live lineup, Roberts identified Payne as the individual who stole Breazeale's purse. At a later date, Roberts was shown a photo lineup, and she again identified Payne.

¶4. While testifying, subsequent to a plea deal, Hathorn confirmed that Payne was the purse thief. She also stated that Rodrique was driving the escape vehicle, she was in the front passenger seat, and Chadwick and Payne were in the backseat. At trial, she explained that they pulled over at Ross, where Payne got out of the vehicle and walked toward the entrance of the store as though he was going to enter it. Hathorn stated that Rodrique parked the car in Ross's parking lot. Rodrique, Chadwick, and Hathorn sat in the car. An older woman was

2

leaving the store as Payne was approaching the entrance. Hathorn testified that Payne waited for the older woman to walk to her car. When she was almost to her car, he ran up and stole her purse off her arm. The woman fell down, and Payne started running. Hathorn stated that Payne tossed the purse under a parked car and ran toward a nearby store. Rodrique drove toward Payne and let him into the car. At trial, several other witnesses identified Payne as the perpetrator.

¶5.     Police also obtained a surveillance video from Ross that showed the entrance to the store. The video depicted Payne snatching the purse off Breazeale's arm and fleeing.

¶6.     Payne was convicted of robbery and was sentenced to fifteen years in the custody of the MDOC. The trial court denied his posttrial motions. This appeal ensued.

## LAW AND DISCUSSION

### I.      *Batson* Challenge

¶7.     On appeal, Payne contends that the trial court erred in denying his *Batson* challenge regarding the prosecutor's use of a peremptory strike on prospective juror twenty. Mississippi Code Annotated section 13-5-2 (Rev. 2012) provides:

> It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose. A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status.

¶8.     In *Batson*, 476 U.S. at 89, the United States Supreme Court held that parties could not exercise peremptory strikes based solely on a potential juror's race. "The *Batson* decision

3

provides procedural directives for the trial court to follow in detecting and disallowing the practice of using peremptory challenges to remove members of an identified racial group from jury service based upon nothing more than their racial identification." *Forrest v. State*, 876 So. 2d 400, 403 (¶4) (Miss. Ct. App. 2003).

¶9.     The *Batson* analysis has three prongs. *Lynch v. State*, 877 So. 2d 1254, 1270 (¶48) (Miss. 2004). First, the party objecting to the opposing party's exercise of the peremptory strike "must . . . make a prima facie showing that race was the criteria for the exercise of a peremptory strike." *Id.* at 1270-71 (¶48). To establish a prima facie case of discrimination, the objecting party must demonstrate: (1) "that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; [and] (3) . . . the facts and circumstances raised an inference that the prosecutor used his peremptory strikes for the purpose of striking minorities." *Id.* at 1271 (¶48).

> However, where the trial court does not explicitly rule on whether the defendant established a prima facie case under *Batson* but nevertheless requires the [State] to provide [gender/]race-neutral reasons for its challenges and the [State] provides reasons for its challenges, the issue of whether the [challenging party] established a prima facie case is moot.

*Id.*

¶10.    Second, the burden shifts to the party exercising the challenge to provide a race-neutral reason for doing so. *Id.* at (¶49). "[A]ny reason [that] is not facially violative of equal protection will suffice." *Id.* In other words, an explanation does not have to be persuasive, or even plausible. *Id.* Unless discriminatory intent is inherent in the proffered

4

explanation, the reason offered will be deemed race-neutral. *Id.*

¶11. Our supreme court has set out a non-exhaustive list of valid race-neutral reasons for the exercise of peremptory challenges, which includes "living in a 'high crime' area, body language, demeanor, [distrust of a juror by the party exercising the strike], inconsistency between oral responses and [the] juror's card, criminal history of [the] juror or [a] relative, social work and other types of employment, and religious beliefs." *Walker v. State*, 815 So. 2d 1209, 1215 (¶13) (Miss. 2002) (citing *Lockett v. State*, 517 So. 2d 1346, 1356-57 (Miss. 1987)).

¶12. The third prong of a *Batson* analysis requires the trial court to "determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory [challenge]." *McFarland v. State*, 707 So. 2d 166, 171 (¶14) (Miss. 1997). The trial court must determine whether the proffered gender/race-neutral reasons were pretexts for intentional gender/race discrimination. *Berry v. State*, 802 So. 2d 1033, 1038 (¶14) (Miss. 2001).

¶13. "In reviewing the trial judge's decision on the gender/race-neutral reasons offered by the party exercising the peremptory strike, this Court will give the decision great deference." *Perry v. State*, 949 So. 2d 764, 767 (¶7) (Miss. Ct. App. 2006) (citing *Lynch*, 877 So. 2d at 1271 (¶50)). "We give such deference to the trial court's findings because the trial judge is in the best position to evaluate the demeanor and credibility of the attorney offering a race-neutral explanation." *Id.*

¶14. In the instant case, during jury selection, defense counsel made a *Batson* challenge

5

based on the State's use of three of its peremptory challenges against minorities. The trial judge held that the pattern of three strikes in a row against people of color created "the issue of a pattern" of striking potential black jurors based on their race. The trial court then looked to the State to provide race-neutral reasons for its three peremptory strikes. The first of the three peremptory strikes exercised by the State and challenged by the defense was against prospective juror nineteen, whom the State listed as a "Pacific Islander." The State's reasoning for striking juror nineteen was that the juror did not answer any questions, had a ponytail and an earring, had no work history, had no wife, and had only lived in the area for a year and a half. The trial court ruled that long hair, an earring, his lack of education, and his employment were not sufficiently race-neutral reasons. Therefore, the trial court upheld the *Batson* challenge.

¶15.   On appeal, Payne takes issue with the prosecution's use of a peremptory strike exercised by the State against prospective juror twenty, an African American woman. When the trial court asked the State to present a race-neutral reason for striking prospective juror twenty, the State responded as follows:

> Your Honor, on [prospective juror twenty,] she lives in Lumberton . . . . We've prosecuted several people for drugs in that area. We've prosecuted several [people with her last name] in the past and the present. There's [sic] several on the docket now.
>
> [When asked s]he's said absolutely nothing about being related to anybody that was being prosecuted. I was told by law enforcement [that she] was not a good person to be on the jury that knew her from the drug agents, not to – that she would not be a good juror . . . . It's got everything to do with her relatives and where she lives, her prior history.

¶16.   After the State and Payne argued their positions, the trial court stated:

6

> The [c]ourt notes for the record the responsibility of the [c]ourt to provide the defendant with a fair, unbiased jury. The heightened scrutiny of a *Batson* challenge ruling by this [c]ourt arises from the fact that defendant is African American and the alleged victim is white or Caucasian. Nevertheless, a straightforward race-neutral reason that has been provided the Court is satisfied with based on the history of the prosecutors and consultations with law enforcement and because it's race neutral, the challenge is denied.

¶17. The third peremptory strike exercised by the State and challenged by the defense was against prospective juror twenty-two, also an African American woman. The trial court rejected the State's race-neutral reason as unsatisfactory because it was the third strike of an African American in a row, and the State's response did not overcome the hurdle of providing a race-neutral reason. Therefore, the *Batson* challenge was upheld.

¶18. The trial court made a factual finding with respect to the *Batson* ruling for juror twenty. As stated, the trial judge is in the best position to evaluate the demeanor and credibility of an attorney's race-neutral explanation. *Perry*, 949 So. 2d at 767 (¶7). Payne argues that living in a high-crime area is a pretext for racial reasons. However, living in a high-crime area is a valid race-neutral reason for exercising a peremptory strike. *See Lockett v. State*, 517 So. 2d 1346, 1356 (Miss. 1987). Furthermore, the State's explanation does not have to be persuasive, or even plausible. *Randall v. State,* 716 So. 2d 584, 588 (¶16) (Miss. 1998) (citation omitted). As such, we cannot find that the trial court's ruling was clearly erroneous or against the overwhelming weight of the evidence. We find this issue without merit.

## II. Mistrial

¶19. Payne also argues that the trial court erred in not granting a mistrial after the State

made comments during closing arguments alluding to Payne's constitutional right to stand trial. The State commented: "We asked you in the beginning of this case to make Jamie Payne take responsibility for what he did. He has not done that. He has put you in the position of having to make me do that. That's what we are here for." Payne did not object when the comment was made; however, Payne requested a mistrial. The State argued that it did not misstate the facts in that Payne did not "take responsibility," and that Payne's codefendants had pleaded guilty. Payne argued that it was an inappropriate comment on his right to a trial by jury.

¶20.    "It is the duty of a trial counsel, if he deems opposing counsel overstepping the wide range of authorized argument, to promptly make objections and insist upon a ruling by the trial court." *Evans v. State*, 725 So. 2d 613, 670 (¶271) (Miss. 1997) (citation omitted). Although, if a comment is "so inflammatory that the trial court should have objected on [its] own motion, the point may be considered." *Gray v. State*, 487 So. 2d 1304, 1312 (Miss. 1986) (citation omitted). This Court reviews alleged misconduct by counsel during closing arguments to see if "the natural and probable effect of the improper argument . . . create[s] unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Baker v. State*, 991 So. 2d 185, 188 (¶12) (Miss. Ct. App. 2008) (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000)).

¶21.    In an analogous case, *Moore v. State*, 932 So. 2d 833, 839 (¶19) (Miss. Ct. App. 2005), the State commented during closing argument: "Y'all didn't want to be here. That [defendant] put you here." The defendant argued the comment implied he did not have a

8

right to argue that he acted in self-defense. This Court agreed that "there [was] no valid reason" for the statement. *Id.* at 840 (¶21). But this Court found no reversible error in the trial court's decision to overrule the defendant's objection because "[t]he jury was well instructed as to [the defendant]'s theory of self-defense, and without more, we cannot find that the [State's] statements negated the effectiveness of the instructions given the jury." *Id.*

¶22.    Here, similarly, we find the remarks made were improper. Nevertheless, the jury was instructed prior to closing arguments that "remarks from counsel are intended to help you understand the evidence and apply the law, but they are not evidence. If any remark of counsel has no basis in evidence, then you must disregard it." Jurors are presumed to follow the instructions of the trial court. *See Chase v. State*, 645 So. 2d 829, 853 (Miss. 1994). When applying the appropriate standard of review, because of the overwhelming evidence against Payne, the State's comments did not result in any unjust prejudice, nor were the statements so inflammatory that the trial court should have objected on its own motion. This argument is without merit.

¶23.    **THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT OF CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.**

**LEE, C.J., GRIFFIS, P.J., CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR. BARNES AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**