726 So.2d 1230 (1998)
Marlon Lavelle OATIS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01188 COA
Court of Appeals of Mississippi.
December 30, 1998.
*1232 Thomas D. Berry, Jr., Bay St. Louis, for Appellant.
Office of the Attorney General By Jeffrey A. Klingfuss, Jackson, Attorney for Appellee.
Before BRIDGES, C.J., and PAYNE, and SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Marlon Lavelle Oatis was convicted by a Hancock County Circuit Court jury of assaulting a police officer. On appeal he raises these issues: (1) denial of a self-defense instruction; (2) weight of the evidence; (3) admission of a tape recording made prior to the assault; and (4) the fairness of the trial. We reject these arguments and affirm.

FACTS
¶ 2. The following are the facts that are most consistent with the verdict. On July 16, 1996, Officer Jutson Roberts was patrolling the streets of Bay St. Louis when a speeding car passed him. The car was traveling at 47 mph in a 25 mph zone. Roberts activated his flashing lights and the vehicle pulled into a driveway. Roberts approached the car, and the driver identified himself as Patrick Oatis. The officer smelled alcohol and noticed that Oatis was slurring his speech. Roberts had little experience in conducting field sobriety tests so he called for assistance. Another officer arrived and began to conduct the test. Oatis threatened that officer and moved toward him with his fist raised. After a brief struggle, the officers succeeded in placing handcuffs on Oatis and getting him into the police car. Oatis began complaining that the officers had "re-broken" his wrist.
¶ 3. During the drive to the jail, Oatis remained belligerent and uttered a stream of profanities. He threatened to sue Roberts, who then activated a tape recorder in the vehicle. Upon arrival at the jail, Oatis was denied admittance because of his complaints regarding his injured wrist. Roberts then drove Oatis to the Hancock County Medical Center.
¶ 4. At the emergency room, Oatis identified himself as Marlon Lavelle Oatis rather *1233 than Patrick Oatis. He remained combative and hospital personnel requested that he be restrained. He was then strapped to a gurney and twice managed to free himself. Following Oatis's second escape, Officer Roberts, another officer, and a hospital employee again attempted to restrain him. Oatis struggled and Officer Roberts was kneed or kicked several times in the ribs. He was thereafter treated for bruised ribs.
¶ 5. Oatis was convicted after a jury trial of assaulting a police officer. He received an eighteen month sentence and a $1000 fine.

DISCUSSION

I. Self-defense instruction
¶ 6. Oatis first contends that the trial court erred in denying his self-defense instruction. He claims that during the struggle, Officer Roberts elbowed him and otherwise started hurting him, which entitled Oatis to attempt to free himself.
¶ 7. The court rejected the instruction because Oatis had denied ever kneeing or otherwise hitting the officer. Oatis testified unequivocally that he did not knee Officer Roberts, as he "couldn't even get his foot loose." Oatis's counsel acknowledged the testimony, but asked that the evidence from other witnesses be considered that Oatis was thrashing about. In other words, Oatis's own denial of ever striking the officer should not prevent a self-defense instruction. The trial judge remained unconvinced.
¶ 8. Without Oatis saying that he hit the officer in necessary self-defense, there is no basis to instruct the jury as to that possibility. Quite simply, self-defense was not Oatis's explanation for what happened.
[W]hether the self-defense issueor any other issue of factshould be submitted to the jury ultimately turns on whether there is in the record credible evidence supporting it. Where a party offers evidence sufficient that a rational jury might find for him on the particular issue, that party of right is entitled to have the court instruct the jury on that issue and through this means submit the issue to the jury for its decision.
Anderson v. State, 571 So.2d 961, 964 (Miss. 1990).
¶ 9. We find that there is insufficient evidence in the record to support the grant of a self-defense instruction.

II. Overwhelming weight of the evidence
¶ 10. Oatis next asserts that the verdict was against the overwhelming weight of the evidence. Because Roberts never photographed his bruise and failed to show it to anyone, Oatis claims that the jury could not conclude that a bruise ever existed. Moreover, Oatis argues that the evidence failed to show any intent on his part to injure Officer Roberts.
¶ 11. In deciding whether the weight of the evidence can sustain the verdict, we accept as true the evidence supporting the verdict, including all reasonable inferences arising form that evidence. "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court" order a new trial. Collier v. State, 711 So.2d 458, 461(Miss.1998).
¶ 12. Officer Roberts, his supervisor, and a hospital employee testified as to Oatis's behavior at the hospital. He was combative and required restraints. All three stated that while attempting to restrain Oatis, he was struggling and flailing about. Roberts stated that he had been kicked in the ribs, that he felt "a lot of pain" and sought medical attention. He testified that he was diagnosed with bruised ribs and was sore for three to four days. Roberts's supervisor testified that Roberts informed him that he had been injured. Another officer, who arrived later, stated that he saw Roberts being treated by a physician.
¶ 13. The simple assault statute protects against "bodily injury" which includes *1234 "physical pain" suffered by the officer. Reining v. State, 606 So.2d 1098, 1103 (Miss. 1992). This evidence would permit a reasonable jury to find Oatis guilty of assaulting Roberts.
¶ 14. Oatis claims that Roberts suffered no injury and simply set him up. That is, he saw Oatis struggling and elected to "throw himself across" the "churning knees" in an effort to cause his own injury. This theory was sufficiently brought out by Oatis's counsel on cross-examination of Roberts. Conflicts in the evidence are for the jury to resolve. Carr v. State, 655 So.2d 824, 838 (Miss.1995). They rejected Oatis's suggestions of a "frame up" and instead chose to believe Officer Roberts. In a more general sense, Oatis's argument that Roberts "elected to take the blows" by attempting to restrain him does not support innocence. Oatis had been ordered to stop thrashing about so that he could be treated. Officers were attempting to restrain him in the exercise of their responsibilities to assist the medical personnel. For an officer to place himself in a position in which he knows he may be hurt is not a criminal law "assumption of the risk" that prevents simple assault from occurring against the law enforcement officer.
¶ 15. Oatis also contends that his intent to injure Officer Roberts was never proven. "Intent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case." Shive v. State, 507 So.2d 898, 900 (Miss.1987). Intent may be determined from the acts of the accused and his conduct, and inferences of guilt may be fairly deducible from all the circumstances. Willis v. State, 518 So.2d 667, 669 (Miss.1988).
¶ 16. On the audiotape Oatis threatened Officer Roberts with bodily harm. Testimony was presented that he continued to threaten him at the hospital. We find that from this evidence, the jury could reasonably infer that Oatis intended to strike Officer Roberts with his knees.

III. Admissibility of the tape recording
¶ 17. Oatis filed a motion in limine and a motion to suppress the tape that was recorded during his transport from the site of his arrest to the jail. The motion to suppress was granted by the trial court on the basis that the tape was untimely produced in discovery. The judge then cautioned that the tape might still be admissible for other purposes, such as impeachment.
¶ 18. During cross-examination of Officer Roberts, Oatis's attorney questioned Roberts about the tape recording and the statements on it. On redirect, the district attorney moved for the admission of the tape recording into evidence. The trial court granted this motion, finding that Oatis had "opened the door" through his questions on cross-examination regarding the tape.
¶ 19. Oatis now contends that his attorney misunderstood the judge's ruling as to the tape's admissibility. The attorney understood the ruling to mean that witnesses could testify as to the contents of the tape but that the tape itself could not be admitted into evidence. The court had ruled that the tape would not be introduced, but it could be used if appropriate to impeach Oatis's testimony about events in the car. For whatever reasons, Oatis's counsel asked Oatis specific questions about the tape, including its contents and the circumstances surrounding its making.
¶ 20. The traditional phrasing is that counsel "opened the door" for what otherwise would not have been admitted. That certainly occurred here, and we find no error based on the order in limine.
¶ 21. Alternatively, Oatis argues that even if the door were open, there are six additional reasons for not allowing the tape into evidence. We will consider each.

1. Miranda violation
¶ 22. Whether Oatis's Miranda rights were violated depends on whether he was subjected to custodial interrogation. A person's right to be given a description of his constitutional rights does not arise from general on the scene questioning nor does it *1235 protect against a voluntary statement. Hunt v. State, 687 So.2d 1154, 1159 (Miss.1996). Oatis was in custody when he was placed in the police car. Although he made the recorded statements while in custody, he did not make them in response to custodial interrogation or any police action designed to elicit an incriminating response. The statements were voluntary outbursts of profanity which Oatis chose to make.

2. Opportunity to listen to the tape
¶ 23. Oatis's attorney never listened to the original tape recording in its entirety. Counsel was provided a copy of the tape the night before trial and the next day stated that he failed to finish it. Following the State's motion to admit the tape recording into evidence, Oatis's attorney objected, arguing that he was never given a chance to listen to the original tape.
"A trial judge has broad discretion as to the admissibility of evidence. Unless this discretion is so abused as to be prejudicial to the accused this Court will not reverse the lower court's ruling." Coleman v. State, 697 So.2d 777, 784 (Miss.1997). Oatis fails to point to any prejudice suffered by him as a result of his not hearing the original recording. He alleges no specific prejudice such as being provided an incomplete copy or a copy of inferior quality than the original. Accordingly, we find that the trial judge did not abuse his discretion in allowing the recording into evidence notwithstanding the failure of Oatis's attorney to listen to all of the original.
¶ 24. Moreover, Oatis's attorney had the opportunity to listen to the copy in its entirety, but said that "I never got through with it. I tried to listen to it for a while. Seemed like it went on longer than [ten minutes] for me. I didn `t even finish it." There is no error based on that.

3. Quality of the tape
¶ 25. Oatis also complains about the quality of the tape recording. It is unclear whether he is complaining about the original or his copy. We will assume that he is challenging the quality of the original, as that is the tape played for the jury. He cites no specific problems but makes the bare assertion that "[t]he tape was of poor quality." "The mere fact that portions of such a recording are inaudible does not render it per se inadmissible. The question is whether what can be heard has probative value within Rule 401." Middlebrook v. State, 555 So.2d 1009, 1012 (Miss.1990). The tape is not totally inaudible, as Oatis can be heard threatening Officer Roberts on the audio tape. The threats on the tape were probative of Oatis's guilt of subsequently assaulting a police officer.

4. Prejudicial effect of the tape
¶ 26. Evidence is to be excluded if its probative value is substantially outweighed by its prejudicial effect. M.R.E. 403. Oatis claims that because the audio tape is filled with obscenities, the prejudicial effect is "horrendous." In a similar case, a videotape recording of the defendant screaming obscenities and threatening police following his arrest was found to be probative, as "[t]he conduct of [the defendant] was continuous, beginning at some time before his mother requested that a call be placed to the police department and lasting through the booking of the Defendant for assault. Due to the nature of this case, the video tape exemplifies the continuing conduct of the Defendant and firmly establishes the mental state of the Defendant." Johnson v. State, 655 So.2d 37, 43 (Miss.1995).
¶ 27. The tape recording of Oatis was made shortly after his arrest during his transport to jail. As in Johnson, it is probative, as it illustrates his continuing conduct and establishes his mental state from the time he was stopped by police up until the assault on Officer Roberts.

5. State of mind
¶ 28. Oatis objects to the admission of the tape on the ground that it relates to his state of mind after his hand was broken and not his state of mind at the hospital.
*1236 ¶ 29. The determination of whether an event is too remote to be admissible is addressed to the sound discretion of the trial judge. Johnson v. State, 655 So.2d 37, 42 (Miss.1995). "Continuous acts or a series of events, especially when closely connected in point of time, which ... are necessary or clearly helpful to a correct understanding of the main transaction ... are as much of the res gestae as the direct act itself...." Id. (quoting McCormick v. State, 159 Miss. 610, 132 So. 757 (1931)). The tape recording occurred prior to the assault on Officer Roberts and exemplifies Oatis's continuing state of mind throughout the evening.

6. Admissibility for impeachment purposes
¶ 30. Oatis argues that the tape should have been admitted solely for impeachment purposes rather than as substantive evidence. However, he fails to point to any testimony which the audio tape might have impeached. As in Johnson, the tape was admissible as substantive evidence of Oatis's state of mind continuing from the time of his arrest until the assault on Officer Roberts.

IV. Verdict contrary to law
¶ 31. Oatis argues that the verdict was contrary to law. He offered an instruction that he must have "purposely or knowingly" caused bodily harm to Officer Roberts. That was denied, and instead the jury was instructed that the harm must have been caused "wilfully."
¶ 32. The words "purposely" or "knowingly" have been held to be synonymous with "wilfully." Lester v. State, 692 So.2d 755, 790 (Miss.1997). We found no harm to Oatis in rejection of his instruction. In fact the indictment and the statute permit simple assault to be proved by reckless conduct. The State did not seek such an instruction. The jury had to find that Oatis wilfully committed the crime, a higher standard than recklessness.
¶ 33. Oatis further complains that he was not allowed to testify that he did not intend to strike Officer Roberts. In fact, Oatis denied striking Officer Roberts at all. Thus he could not have had a relevant state of mind under his construction of the events.
¶ 34. Finally, Oatis claims that the statute was never intended to protect law enforcement officers against injuries which do not rise to the level of serious bodily injury but which are more serious than everyday scrapes and bruises. A minor injury is a "bodily injury" even though it is not a traumatic injury. Reining v. State, 606 So.2d 1098, 1103 (Miss.1992). Oatis has cited no authority that there are injuries less than simple assault bodily injuries, the causing of which is not an assault. "Injury" is not a mere touching, but does require at least some pain. That occurred here.
¶ 35. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF EIGHTEEN MONTHS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND $1,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HANCOCK COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, and PAYNE, JJ., concur.