MYERS, P.J.,
for the Court:
¶ 1. Gary Tubby II was convicted by a jury sitting before the Neshoba County Circuit Court for burglary of a dwelling with intent to steal in violation of Mississippi Code Annotated section 97-17-23 (Supp.2009). The circuit court sentenced Tubby to eleven years in the custody of the Mississippi Department of Corrections. Tubby’s post-trial motion for a new trial was denied, and he perfected this appeal. Tubby herein claims that: (1) the circuit court erred in allowing the State to amend the indictment to correct the name of the owner of the dwelling; (2) there was pros-ecutorial misconduct during his trial; and (3) the jury’s verdict is against the overwhelming weight of the evidence. Finding no error, we affirm the Neshoba County Circuit Court’s judgment of conviction and sentence.
FACTS
¶ 2. On August 8, 2008, Tubby and Willie Wayne Tubby (Willie) were arrested by the Neshoba County Sheriffs Department after witness Richard Hamilton reportedly found the two men in the process of bur *848 glarizing the mobile home of Jeff Hames. Both men were indicted together on one count of burglary of a dwelling with intent to steal and subsequently tried together. Willie, however, eventually was discharged from the case based on the circuit court’s finding that the State had presented insufficient evidence in its case against him.
¶ 3. At trial, Denise Goodin testified that on August 8, at approximately midday, she was at her home in Neshoba County, Mississippi, when she noticed a vehicle sitting in her driveway. The vehicle sat there idling for a few seconds and then backed out of her driveway and drove down the road. It reappeared a few seconds later, slowly passed by her house, and turned onto a nearby “cut-off” road. Concerned, Goodin called her husband at work, who then called Goodin’s father, Hamilton, who lived close by to Goodin’s house. Goodin next noticed two men wearing dark-colored clothes walking down the road. Goo-din called Hamilton, who at this point was already in his truck driving toward her house. Believing that the vehicle she saw belonged to one of these men, Goodin told Hamilton where she thought the vehicle was located and instructed him to get its tag number. Hamilton soon spotted the parked vehicle and wrote down its tag number. He then called Goodin and told her to call “911” because it appeared to him that “someone was up to no good.”
¶4. On a hunch, Hamilton decided to check on Hames’s mobile home located across the road from Goodin’s house. Hamilton pulled in Hames’s driveway and parked in front of the mobile home. He got out of his truck and walked around to the back of the mobile home where he first saw a man, whom he later identified as Willie, standing approximately five feet away from the mobile home’s back door. He then saw another man, whom he identified as Tubby, coming out of the mobile home’s back door. Hamilton, who had a pistol with him, told the men to stop, “or [he would] shoot.” Tubby and Willie ran, and Hamilton fired a number of shots into the air. Both men continued to run, and Hamilton gave chase. According to Hamilton, Willie dove off into a “thicket,” and Tubby ran down the road. Hamilton did not catch Tubby, but he found Willie “laying [sic] in the roadbed” and detained him until the authorities arrived. Tubby was apprehended by sheriffs deputies a short time later.
¶ 5. After his arrest, Investigator Ralph Sciple read Tubby his Miranda rights, to which Tubby affirmed he understood. According to Investigator Sciple, at no time did Tubby invoke his right to counsel or to remain silent; nor did Investigator Sciple perceive Tubby to be under the influence of alcohol or narcotics. When Investigator Sciple questioned Tubby about the incident at the mobile home, Tubby made an oral statement “that he had been riding with Willie Tubby and that it was his idea to break into something and steal something to sell.” Three days later, Investigator Sciple questioned Tubby once more at the Neshoba County Jail, and he again informed Tubby of his Miranda rights, verbally and in writing on a waiver-of-rights form, which Tubby signed. Tubby made another statement, which Investigator Sci-ple wrote down and which Tubby also signed. The statement was entered into evidence and reads as follows:
I had been drinking Friday 8-8-08 and don’t remember much. I remember that me and Wayne Tubby were together and it was my idea to break into something to get something to sell for money. Me and Wayne went to this trailer and I opened the back door with my knife and then someone came around the trailer and said stop and I ran.
*849 ¶ 6. Hames was called by the State to testify, and he stated that he was the owner of the mobile home in question. Hames told the jury that in addition to his home in Neshoba, he owns another home in Pelahatchie, Mississippi, where he spends a considerable amount of time to be closer to his doctor. Hames said he was in Pelahatchie when he heard about the incident and immediately drove to Neshoba to check on his home. Upon inspection, Hames said he noticed that his back door had been pried opened, but he did not find anything missing from inside the home.
¶ 7. Tubby was the only person to testify during his case-in-chief. Tubby told the jury that on August 8, 2008, he and Willie had noticed some “AC’s” in the front of a mobile home. He said Willie walked up to the mobile home’s front door and knocked to inquire about them. At which point, Tubby walked behind the mobile home “to urinate.” Tubby said that while standing there, he thought he noticed someone pass by the window of the “trailer’s back door,” so he went up to the door and knocked. All of a sudden a guy, whom Tubby indicated was Hamilton, came from out of nowhere and said “Hey” and “started shooting.” Tubby testified that at no point did he “go inside the trailer,” nor did he “take anything from the trailer.” When questioned about the oral statement he made to Investigator Sciple on August 8, Tubby indicated that he did not tell Investigator Sciple he had gone to the mobile home to steal something, and he told the jury that “the arresting officer had roughed [him] up a little bit, [and threw him] around.” When asked about the written statement he had made to Investigator Sciple later at the jail, Tubby said that Investigator Sciple wrote something down and told him to sign it. Tubby claimed he did so without reading what Investigator Sciple had written.
¶ 8. The jury found Tubby guilty of burglary of a dwelling, and Tubby now appeals. Additional facts, as necessary, will be related during our discussion.
DISCUSSION
1. Indictment
¶ 9. The purpose of an indictment is to put a defendant on notice of the charges against him so that he is able to prepare an adequate defense. Evans v. State, 916 So.2d 550, 551 (¶ 5) (Miss.Ct. App.2005). “All that is required is that the indictment provide ‘a concise and clear statement of the elements of the crimes charged.’” Id. at 551-52 (¶5) (quoting Williams v. State, 445 So.2d 798, 804 (Miss.1984)). Courts may amend indictments to correct defects of form, but only the grand jury may correct defects of substance. Jones v. State, 912 So.2d 973, 976 (¶ 9) (Miss.2005). Whether an indictment is defective is an issue of law, which we review de novo. Moten v. State, 20 So.3d 757, 759 (¶ 4) (Miss.Ct.App.2009).
¶ 10. Tubby’s indictment in its original form alleged, in parts, that on August 8, 2008, Tubby “did ... feloniously and bur-glariously break and enter a certain building located in Neshoba County, Mississippi, commonly known as ... a mobile home of the property of Jeff Haynes, with the ... felonious and burglarious intent to take, steal and carry away certain goods, wares and chattels located in said dwelling and being the personal property of Jeff Haynes ... in violation of [s]ection 97-17-23....” Through Hames’s testimony at trial, the State learned it had incorrectly spelled Hames’s last name as “Haynes” in the indictment. At the close of its case, the State made a motion to amend the indictment to reflect the true spelling of the property owner’s name, which the circuit court granted over Tubby’s objection.
*850 ¶ 11. Tubby argues that this was reversible error, as the circuit court imper-missibly allowed the State to make a substantive change to his indictment during the course of trial. He maintains on appeal that because the name of the owner whose dwelling he was accused of breaking and entering was misspelled, his indictment was fatally defective. And he reasserts the claim he made to the circuit court that this factor prejudiced his defense because it required his counsel “to comb the countryside for a non-existent owner of the dwelling.”
¶ 12. As this Court noted in Stradford v. State, 771 So.2d 390, 395 (¶14) (Miss.Ct.App.2000), there are “[m]ountains of case law out of our Mississippi courts [which] speak to this issue of amending indictments to reflect the true names of parties.” (Citing Evans v. State, 499 So.2d 781 (Miss.1986); Bingham v. State, 434 So.2d 220 (Miss.1983); Evans v. State, 425 So.2d 1043 (Miss.1983); Jones v. State, 279 So.2d 594 (Miss.1973); McDole v. State, 229 Miss. 646, 91 So.2d 738 (1957); Gillespie v. State, 221 Miss. 116, 72 So.2d 245 (1954); and Burson v. State, 756 So.2d 830 (Miss.Ct.App.2000)). Mississippi Code Annotated section 99-17-13 (Rev.2007) explicitly permits the amendment of an indictment where the change is to an immaterial matter and the defendant will not be prejudiced in his defense. That section states in part:
[I]t shall and may be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense on the merits, to order such indictment and the record and proceedings in the court to be amended according to the proof, whenever it may be deemed necessary by the court to amend such indictment....
Miss.Code Ann. § 99-17-13. The test used in determining whether the amendment is one of form or substance is as follows:
Whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence [the] accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.
Stradford, 771 So.2d at 396 (¶ 16) (citations omitted). Section 99-17-13 provides the following examples of amendments made to indictments that are considered to be form rather than substance:
The name or description of any person, body politic or corporate, therein stated or alleged to be the owner of any property, real or personal, which shall form the subject of any offense charged therein, or in the name or description of any person, body politic or corporate, therein stated or alleged to be injured or damaged; or intended to be injured or damaged, by the commission of such offense or in the Christian name or surname, or both, or other description whatever, of any person whomsoever, therein named or described, or in the ownership of any property named or described therein, or in the description of any property or thing....
Stradford, 771 So.2d at 396 (¶ 16).
¶ 13. Here, we find the amendment to Tubby’s indictment was a matter of simple form. The amendment effected no material change in the offense Tubby was accused of committing. The elements of the offense — the burglarious breaking and entering a dwelling of another, and the felonious intent to commit some crime therein — were sufficiently set forth in the *851 indictment. See Miss. Code Ann. § 97-17-23. The indictment put Tubby on sufficient notice that he was being charged with the burglary of someone else’s dwelling. See Triplett v. State, 910 So.2d 581, 583 (¶ 6) (Miss.Ct.App.2005) (“[T]o convict under [section] 97-17-23, one must demonstrate breaking and entering of a dwelling of another.”) (emphasis added). And despite the misspelling of Hames’s last name, it is quite apparent that Hames was the person whom the grand jury intended to identify in the indictment. See Parchman v. State, 279 So.2d 602, 603 (Miss.1973) (“[C]hanges which conform the indictment so as to correctly name the person intended by the grand jury are allowable.”).
¶ 14. Tubby, nevertheless, argues that this “factor” caused his defense counsel to “have to comb the countryside for a nonexistent” person, which thereby prejudiced his defense. We find this argument unavailing. First, assuming this was true, Tubby did not articulate to the circuit court, in the slightest, how his defense would have changed had Hames been located and presumably interviewed. Except for providing the correct spelling of his last name, Hames offered nothing that was not already available to Tubby through other sources, himself included, with regard to the State’s accusation. Second, as exhibited by the photographs submitted into evidence by his defense counsel showing different views of the mobile home in question, Tubby’s counsel knew of the mobile home’s location and, obviously, had conducted an investigation of the State’s claim, on Tubby’s behalf.
¶ 15. In keeping with Stradford, and the vast number of preceding cases supporting it, this issue is without merit.
2. Prosecutorial Misconduct
¶ 16. Tubby prefaces his argument on this issue by pointing out that the State’s entire case centered on the testimony of Hamilton, who was the only person that claimed Tubby was inside the mobile home. Tubby explains that his defense at trial was that Hamilton had unlawfully discharged his firearm; therefore, Hamilton had a motive to make such a claim so as not to subject himself to prosecution. He, thus, claims that the principal issue with regard to the jury’s determination in this matter was witness credibility. Specifically, the jury had to decide if Tubby was telling the truth when he stated that he did not enter the mobile home or if Hamilton was telling the truth when he said he saw Tubby inside the mobile home. Tubby contends that the prosecutor interfered with that determination by vouching for Hamilton’s credibility as a witness and attacking Tubby’s credibility, and also by making arguments based on facts not in evidence.
¶ 17. According to Tubby, the most serious wrongdoing occurred during closing arguments when the prosecutor said that “[Tubby] didn’t steal anything. Do you know why? Thank God for good neighbors. Mr. Hamilton isn’t facing any charges[,] and he never will face any charges stemming from this incident.” Another occurred when the prosecutor said, “Tubby had never done anything illegal; but he was drinking under age that day.” Tubby also submits that during the defense’s case-in-chief, the prosecutor sought to undermine Tubby’s credibility by repeatedly asking him to state if other witnesses were “lying.”
¶ 18. Tubby acknowledges that his trial counsel did not object to any of the complained of errors and that our review is, therefore, limited to the plain error standard. He further submits that even though each error might not be reversible standing alone, this Court can consider each in determining cumulative error.
*852 ¶ 19. As our supreme court has stated many times, “issues not presented to the trial court for lack of contemporaneous objection are procedurally barred, and error, if any, is waived.” Goff v. State, 14 So.3d 625, 655 (¶ 118) (Miss.2009) (citations omitted). This bar will be lifted only in exceptional circumstances so as to prevent a miscarriage of justice. Id. “Such circumstances are required for [our appellate courts] to consider plain error, despite failure to preserve such error.” Id.
¶ 20. Based on our review of the record before us, we do not find the comments complained of, either individually or cumulatively, are so egregious as to have interfered with the fairness of Tubby’s trial. Accordingly, this assignment of error lacks merit.
3. Weight of the Evidence
¶ 21. On this assignment of error, Hamilton’s testimony that Tubby was inside the mobile home is the only evidence Tubby brings into issue. Tubby argues that Hamilton’s testimony is contrary to the physical facts and is too unworthy of belief to sustain a burglary conviction. Thus, he contends the jury’s verdict is against the overwhelming weight of the evidence.
¶ 22. A motion for a new trial, based on the weight of the evidence, will be successful only when the verdict “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). The reviewing court first views all of the evidence in the light most favorable to the verdict. Id. If the evidence clearly preponderates against the verdict, the proper remedy is to vacate the verdict and order a new trial. Id.
¶ 23. Specifically, Tubby contends that based upon Hamilton’s testimony, Hamilton’s view would have been obstructed by the mobile home’s back door. Because the back door opens outward and southward, toward the direction Hamilton had approached the rear of the mobile home from, Hamilton could not have seen Tubby inside the trailer.
¶ 24. Review of the record reveals, however, that Hamilton testified the back door was wide open when he approached the rear of the mobile home. Hamilton said he saw one person standing outside the mobile home, that being Willie. He next saw Tubby come out of the mobile home’s back door. When questioned on cross-examination, Hamilton told the jury there are steps leading up to the mobile home’s back door, and he said Tubby did not stop at those steps, rather “he jumped out of the trailer and [ran].”
¶25. Considering this evidence in the light most favorable to the verdict, we find that it was of sufficient weight to establish that Tubby had “entered” Hames’s mobile home. The credibility of Hamilton’s testimony was solely for the jury to weigh and consider. Miller v. State, 983 So.2d 1051, 1054 (¶ 14) (Miss.2008). Accordingly, this issue is without merit.
¶ 26. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF ELEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ„ CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY.