# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00630-COA

AKEEM RASHEED A/K/A AKEEM MUWAKKIL        APPELLANT
RASHEED A/K/A AKEEM ABDULLAH
RASHEED A/K/A LEE MORRIS SHARP A/K/A
LAMAR SHARP

v.

STATE OF MISSISSIPPI                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2016 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF AGGRAVATED ASSAULT AND BURGLARY OF A DWELLING AND SENTENCED AS A HABITUAL OFFENDER TO TWO CONCURRENT TERMS OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE |
| DISPOSITION: | AFFIRMED - 08/01/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1. Following a jury trial in the Oktibbeha County Circuit Court, Akeem Rasheed was

convicted of aggravated assault and burglary of a dwelling based on evidence that he kicked

down the door of Renee Childs's apartment in Starkville and stabbed Michael Randle in the back with a knife. Rasheed and Childs had been in a romantic relationship, while Randle was the father of Childs's daughter. A short time after Randle was stabbed, Rasheed was arrested a few blocks from the apartment carrying a knife. At trial, the jury heard testimony from Randle, Childs, and Rasheed, as well as 911 calls placed by Randle and Childs and other evidence. Following his conviction, Rasheed was sentenced as a habitual offender to two concurrent terms of life in the custody of the Mississippi Department of Corrections without eligibility for parole or probation.

¶2. On appeal, Rasheed's appointed counsel argues that the trial judge abused his discretion by refusing Rasheed's requested jury instructions on self-defense. However, because Rasheed testified at trial and denied that he stabbed Randle, and because the evidence did not support a self-defense claim, the trial judge did not abuse his discretion by declining to instruct the jury on self-defense. Rasheed's appointed counsel also argues that Rasheed was denied a fair trial as a result of various allegedly prejudicial comments by the prosecutors during voir dire and closing argument. However, Rasheed did not object to any of these comments, most if not all of the comments were entirely proper and innocuous, and none of the comments were so inflammatory or prejudicial as to require a new trial. Finally, in a pro se supplemental brief, Rasheed alleges a series of additional errors. However, most of the issues raised in Rasheed's pro se brief are procedurally barred because they were not raised in the trial court, and all are without merit. Accordingly, for the reasons discussed in

more detail below, we affirm Rasheed's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶3.     Around 9 p.m. on July 29, 2014, Randle was visiting Childs and their five-year-old daughter at Childs's apartment in Starkville. Rasheed knocked on the door and identified himself to Childs. Without opening the door, Childs asked Rasheed to leave, and he did.

¶4.     Rasheed and Childs had been in a romantic relationship. Although Rasheed believed that the relationship was "exclusive," Childs testified that it was not. Childs testified that Rasheed had called her earlier that day, and she had asked him not to come to her apartment because Randle would be there to visit. Randle and Rasheed did not know one another.

¶5.     Rasheed returned to the apartment ten to twenty minutes later and kicked in the door. Rasheed then entered the apartment and attacked Randle. Childs ran from the apartment and went to a neighbor's apartment to call 911. After a short struggle with Randle, Rasheed pulled a knife from his back pocket and stabbed Randle in the back. Rasheed then fled, and Randle called 911.

¶6.     Recordings of the 911 calls from Childs and Randle were admitted into evidence at trial. Childs told the dispatcher that Akeem Abdullah[1] had broken into her apartment and "had a knife." Randle told the dispatcher that a black man in a red shirt had stabbed him in the back with a knife and then fled.

¶7.     Officers from the Starkville Police Department responded to Childs's apartment.

---

[1] Rasheed is also known as Akeem Abdullah Rasheed.

Childs and Randle told the officers that Rasheed had stabbed Randle and then fled wearing a red shirt. Randle showed the officers the stab wound to his back. Officers also observed that the apartment door had been knocked off its hinges from the outside into the apartment.

¶8. Officers arrested Rasheed on Jackson Street a few blocks from Childs's apartment. Rasheed was wearing a brown shirt, but he was carrying a plastic bag with a red shirt in it. After the officers returned to the police station, they also found a filet knife with a seven-inch blade in the bag. No blood was apparent on the knife or the shirt. At the time of his arrest, Rasheed denied that he knew Childs. At the police station, Rasheed signed a waiver of his *Miranda*[2] rights and gave a recorded statement to Detective Stephanie Perkins.

¶9. An Oktibbeha County grand jury indicted Rasheed for aggravated assault and burglary of a dwelling. The indictment was later amended to charge Rasheed as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015). The case proceeded to a jury trial on April 19, 2016.

¶10. At trial, Rasheed testified that when he first went to Childs's apartment, she asked him to leave and come back later. Rasheed claimed that when he returned thirty or forty-five minutes later, he knocked on the door, and Childs invited him into the apartment.[3] He testified that Randle then became angry and attacked him. Rasheed claimed that as he and Randle were "tussling" in the kitchen, Randle picked up a knife and attempted to stab him,

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Rasheed claimed that Childs previously told him that Randle had kicked the door in on another occasion.

4

but he was able to wrestle the knife away from Randle. Rasheed then testified that, after he took the knife from Randle, "I just -- I laid the knife on the table, and I just backed on out of the door." Rasheed clearly and repeatedly denied that he ever stabbed Randle during the altercation. Rasheed claimed that the knife that the police later discovered in his plastic bag was a different knife. Rasheed also claimed that he was under the influence of drugs and alcohol during his post-arrest interview with Detective Perkins.

¶11. After Rasheed testified, the State called Detective Perkins as a rebuttal witness, and a video of her interview of Rasheed was admitted into evidence. In the interview, Rasheed told Perkins that he went to Childs's apartment that evening, but Childs told him that "she had company," so he left. Rasheed said that he went to his aunt's apartment across the street but returned to Childs's apartment when she called and told him that she needed to talk to him. Rasheed said that when he returned to Childs's apartment, he and Randle tussled, Randle pulled out a knife, and he took the knife from Randle. Perkins then asked whether he stabbed Randle with the knife. At one point, Rasheed answered, "apparently." Rasheed later said that he did not remember stabbing Randle but that it "was possible" "because it happened so fast." Rasheed said that whatever had occurred was "not intentional" and that he was "remorseful." Near the end of the interview, Perkins asked Rasheed whether he stabbed Randle after taking the knife from him, and Rasheed answered, "Yes, ma'am."

¶12. The jury found Rasheed guilty of both aggravated assault and burglary of a dwelling. A separate hearing was held on Rasheed's status as a habitual offender under section 99-19-

83. The State presented certified pen-packs showing Rasheed's prior convictions, and the trial judge found that the State had met its burden of proof that Rasheed was a habitual offender under section 99-19-83. Rasheed subsequently filed a timely motion for a judgment notwithstanding the verdict or a new trial, which was denied, and a timely notice of appeal.

## DISCUSSION

¶13.    Rasheed's appointed counsel from the Office of State Public Defender, Indigent Appeals Division, filed a brief raising four issues: (1) whether the trial court erred by denying a self-defense instruction that Rasheed requested; (2) whether the trial court erroneously instructed the jury on the elements of aggravated assault; (3) whether the trial court should have declared a mistrial sua sponte because "multiple instances of prosecutorial misconduct denied [Rasheed] a fair trial"; and (4) whether trial counsel's failure to object to the alleged prosecutorial misconduct constituted ineffective assistance of counsel. Rasheed then filed a pro se supplemental brief raising eight additional issues. We address the issues raised by appointed counsel first and then turn to Rasheed's additional issues.

### I.    Jury Instructions

#### A.    Self-Defense Instruction

¶14.    Rasheed first argues that the trial judge erred by refusing his proposed self-defense instruction. During the charge conference, the trial judge stated that he saw no evidence of self-defense given that Rasheed denied that he stabbed Randle. In response, Rasheed's trial counsel twice stated that he agreed with the judge's assessment of the evidence, although

6

counsel did not withdraw the self-defense instruction that he had submitted prior to trial. The judge refused the instruction.

¶15. "The trial court enjoys considerable discretion regarding the form and substance of jury instructions." *Higgins v. State*, 725 So. 2d 220, 223 (¶15) (Miss. 1998). Therefore, we review the grant or denial of jury instructions for an abuse of discretion. *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010). The instructions must be read as a whole and "must fairly announce the law of the case and not create an injustice against the defendant." *Davis v. State*, 18 So. 3d 842, 847 (¶14) (Miss. 2009). "In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Milano v. State*, 790 So. 2d 179, 184 (¶14) (Miss. 2001). Moreover, a defendant's "right to jury instructions that present his theory of the case . . . is not absolute." *Davis*, 18 So. 3d at 847 (¶15). A defendant is not entitled to an instruction that is "without foundation in the evidence." *Morgan v. State*, 117 So. 3d 619, 623 (¶14) (Miss. 2013) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012)).

¶16. In *Oatis v. State*, 726 So. 2d 1230 (Miss. Ct. App. 1998), the defendant was charged with assaulting a police officer and requested a self-defense instruction even though he "denied ever kneeing or otherwise hitting the officer." *Id.* at 1233 (¶¶6-7). He contended that the jury could infer from "the evidence from other witnesses" that he struck the officer because the officer "elbowed him and otherwise started hurting him." *Id*. "The trial judge remained unconvinced" and refused the instruction, and this Court affirmed. *Id.* at (¶¶7-9).

This Court reasoned: "Without [the defendant] saying that he hit the officer in necessary self-defense, there [was] no basis to instruct the jury as to that possibility. Quite simply, self-defense was not [the defendant's] explanation for what happened." *Id.* at (¶8); *accord Osborne v. State*, 843 So. 2d 99, 101-02 (¶¶7-9) (Miss. Ct. App. 2003) (holding that the trial court did not abuse its discretion in denying a self-defense instruction where the defendant denied any contact with the victim); *cf. Morgan*, 117 So. 3d at 622-24 (¶¶13-17) (holding that the trial court did not abuse its discretion by denying the defendant's requested instruction on imperfect self-defense because "the only theory presented through witnesses called by the defense was that [the defendant] was not the shooter").

¶17. The same reasoning applies in this case. Rasheed denied that he stabbed Randle. According to Rasheed's version of events, he "just . . . laid the knife on the table," and then "just backed on out of the door." Indeed, during the charge conference, even Rasheed's trial counsel felt obliged to acknowledge that the evidence did not seem to support a claim of self-defense. The trial judge did not abuse his discretion by refusing the instruction proffered by Rasheed.

### B. Aggravated-Assault Instruction

¶18. Rasheed also makes a related argument that the jury was improperly instructed on the elements of aggravated assault. The trial court instructed the jury that the State was required to prove beyond a reasonable doubt that "Rasheed knowingly and unlawfully caused bodily injury to . . . Randle by using a deadly weapon, a knife, to stab . . . Randle." However, the

trial judge refused Rasheed's proposed instruction, which would have also required the jury to find that Rasheed did not act "in necessary self-defense."

¶19.   For the reasons discussed in the immediately preceding section, the trial judge did not abuse his discretion by denying Rasheed's requested instruction.  Because Rasheed denied that he stabbed Randle, he was not entitled to instructions on self-defense or on the State's burden to disprove a properly raised claim of self-defense.  *Shelton v. State*, 728 So. 2d 105, 116-17 (¶62) (Miss. Ct. App. 1998).  "Generally, to prove aggravated assault, in the manner charged here, the State has to prove two elements—that the defendant (1) attempted to cause or purposely or knowingly caused bodily injury to another (2) with a deadly weapon." *Duke v. State*, 146 So. 3d 401, 405 (¶16) (Miss. Ct. App. 2014).  The State's "additional burden" of proving "a third required element—that the [assault] was 'not in necessary self-defense'"—arises only if the evidence is sufficient to support a self-defense claim.  *Id.* at 405-06 (¶16); *see also McIntosh v. State*, 749 So. 2d 1235, 1240 (¶17) (Miss. Ct. App. 1999) ("*Once a defendant properly raises self-defense*, the burden of proof rests with the prosecution to disprove that a defendant acted in necessary self-defense."  (Emphasis added)).  Because the evidence in this case did not support a claim of self-defense, the trial judge did not abuse his discretion by refusing to instruct the jury on this additional burden. *Shelton*, 728 So. 2d at 116-17 (¶62).

## II.   Alleged Prosecutorial Misconduct

¶20.   Rasheed next argues that statements by the district attorney (DA) and assistant district

attorney (ADA) prejudiced his right to a fair trial. Rasheed contends that, beginning in voir dire and continuing through closing arguments, the prosecutors made a litany of improper comments. Although Rasheed's trial counsel did not object to any of these comments, Rasheed now insists that the trial judge should have ordered a mistrial sua sponte and that his trial counsel's failure to object constituted ineffective assistance of counsel.

¶21.    Rasheed's "failure to object to the prosecutor's comments during voir dire renders this issue procedurally barred." *Neal v. State*, 15 So. 3d 388, 401 (¶27) (Miss. 2009). Likewise, "[c]ontemporaneous objections to allegedly erroneous comments of the prosecuting attorney in closing arguments must be made or the point is waived." *Gray v. State*, 487 So. 2d 1304, 1312 (Miss. 1986). If no contemporaneous objection is made, "the point may be considered" on appeal only "if the argument [was] so 'inflammatory' that the trial judge should have objected on his own motion." *Id.* (quoting *Griffin v. State*, 292 So. 2d 159, 163 (Miss. 1974)). However, "[w]ide latitude is generally available to counsel to argue his case on closing argument." *Williams v. State*, 684 So. 2d 1179, 1205 (Miss. 1996).

¶22.    "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a

10

result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. As to *Strickland*'s first prong, our Supreme Court has held that, in general, "'counsel's choice of whether or not to . . . make certain objections fall[s] within the ambit of trial strategy' and cannot give rise to an ineffective assistance of counsel claim." *Carr v. State*, 873 So. 2d 991, 1003 (¶27) (Miss. 2004) (quoting *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995)). As to the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶23. With these principles in mind, we consider the various comments that Rasheed alleges were improper. First, near the beginning of voir dire, the ADA stated as follows:

> This is a hugely important case to the parties, . . . Akeem Rasheed and also the State of Mississippi. I represent the State of Mississippi. It's an important case because one of the government[']s most important role[s] is to maintain law and order on behalf of the whole society, to hold people accountable for the crimes that they commit, and to ensure that justice is done; not held accountable for the crimes they don't commit. And it carries with it a grave responsibility to be a juror, okay? Because convicting someone of a crime and potentially taking away their liberty would be one of the most serious things that a government could ever do. And so this is about making sure that Mr. Rasheed and the State of Mississippi get a fair trial, okay? Does everybody agree here that justice can only be done with a fair trial, with a fair and impartial jury; is that right?

Rasheed selectively quotes from these comments and argues that the ADA inappropriately asked jurors to "act on behalf of the whole society." However, that was neither stated nor implied. The ADA stated that it was the role *of the government* to act on behalf of society;

11

the ADA emphasized that it was the jury's role to be "fair and impartial."

¶24.    Rasheed next complains that, during voir dire, the ADA asked the jurors a brief series of questions such as whether they thought it was "important to be able to feel safe and secure in [their] own home[s]" and "to defend their child[ren] from danger," and whether they had ever "been jealous" or taken any "sort of violent action" out of jealousy.  Although he did not object at trial, Rasheed now argues that these were improper "Golden Rule" arguments and improperly asked the jurors to place themselves in the position of the victim.  These open-ended voir dire questions were not improper.  In addition, the issue is procedurally barred, and the comments certainly were not so inflammatory as to mandate sua sponte intervention by the trial judge or to establish prejudice under *Strickland*.

¶25.    Rasheed next asserts that the ADA improperly sought to elicit sympathy during voir dire by mentioning that he had some difficulty hearing and that he had once injured his back.  This argument is without merit.  The ADA simply told jurors that he sometimes talked too loud because of his hearing issue.  He mentioned his back injury only in the course of explaining that voir dire was intended in part to identify any potential juror who might not be "the right person to be a juror on a particular case"—to illustrate the point, he said that he probably should not serve as a juror on a case about a serious back injury.  The ADA's comments were neither improper nor prejudicial.

¶26.    Rasheed also argues that the prosecutors made several improper comments during opening and closing arguments.  During his opening argument, the DA stated as follows:

12

Well, that begs the question if the case is that simple what are we doing here? Well, I'll tell you. I'm sure the defendant will come up with some sort of defense. He's got a smart lawyer. He'll find some reason to claim that he shouldn't be found guilty of these crimes. He may say that he didn't break into the apartment. That Ms. Childs let him in. Thankfully the police officers took pictures of the scene. And so you'll get to look at the pictures of that door and decide for yourself whether that picture shows a door that's been kicked in or a door where somebody was let in. . . . He may also try to claim . . . that this is somehow self-defense; that Mr. Randle initiated the confrontation or some other reason to justify his actions. The problem with this story is there are no facts to support it.

¶27. Rasheed argues that the DA's rhetorical question—"[W]hat are we doing here?"—was an improper suggestion that his defense was "a fraud or scam." However, in context, there was nothing improper about the comment. The DA was simply addressing the lack of evidence to support potential defenses. In addition, while a prosecutor should refrain from personal attacks on defense counsel, *see, e.g.*, *Edwards v. State*, 737 So. 2d 275, 300-01 (¶¶54-56) (Miss. 1999), and should not comment on the defendant's right to a trial by jury, *see, e.g.*, *Payne v. State*, 207 So. 3d 1282, 1287-88 (¶¶19-22) (Miss. Ct. App. 2016), the above-quoted comments were neither of these things. The DA's comments were not improper, prejudicial, or grounds for the trial judge to order a mistrial sua sponte.

¶28. Finally, Rasheed asserts that during closing argument the ADA "repeatedly vouched for the truthfulness of the [State's] witnesses." Rasheed cites a handful of instances in which the prosecutor argued that a witness told "the truth" or testified "honestly." Once again, Rasheed did not object to any of the alleged improper vouching. "While a prosecutor is prohibited from stating his personal opinion as to the veracity of a witness, objections must

be made so that the trial judge may take corrective action." *Palmer v. State*, 878 So. 2d 1009, 1012 (¶9) (Miss. Ct. App. 2004). Furthermore, "the prosecution is entitled to argue the credibility of its witnesses after it has been challenged," *Brown v. State*, 798 So. 2d 481, 492 (¶10) (Miss. 2001), and Rasheed plainly challenged Childs's and Randle's credibility at trial. In any event, the comments that Rasheed now cites were not so inflammatory as to compel the trial judge to act sua sponte, and trial counsel's decision not to object was not an error of such seriousness as to implicate Rasheed's Sixth Amendment right to counsel.

¶29. In summary, Rasheed did not object to any of the statements that he now says deprived him of a fair trial. Most of the statements he now cites were innocuous and entirely proper, and none were so inflammatory or prejudicial as to warrant a new trial.

### III. Rasheed's Pro Se Briefs

¶30. Rasheed filed a pro se supplemental brief and reply brief that raise eight additional issues. For the reasons that follow, none of these issues warrants reversal or a new trial.

¶31. First, Rasheed argues that the arresting police officer and a Starkville municipal judge "conspired" to arrest him and that it was improper for the arresting officer to sign documents in the capacity of the deputy clerk of the municipal court. Rasheed cites no authority that supports this claim, and it is without merit.

¶32. Second, Rasheed argues that he should not have been sentenced as a habitual offender because the State failed to prove his habitual offender status under section 99-19-83. This issue is without merit. Rasheed's indictment was properly amended to reflect his habitual

14

offender status, and at Rasheed's sentencing hearing, certified pen-packs were admitted without objection that proved that Rasheed had been convicted of multiple felonies, that he had served separate terms of one or more year in prison, and that he had been convicted of at least one crime of violence (armed robbery).

¶33. Third, Rasheed argues that the trial judge erred by allowing the Oktibbeha County Emergency Management Agency/E-911 director to testify and by admitting recordings of the 911 calls from Randle and Childs. He argues that his rights under the Confrontation Clause were violated because the 911 dispatchers were not subject to cross-examination. These issues are procedurally barred because they were not raised at trial. Also, the arguments are without merit. The recordings were plainly relevant and were properly authenticated. The dispatchers' questions and Randle's and Childs's answers were not "testimonial" in nature and thus did not implicate the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 826-29 (2006) (concluding that the usual purpose of a 911 call is "to describe current circumstances requiring police assistance" in connection with "an ongoing emergency," not to prove the facts of a past crime). Moreover, there could be no Confrontation Clause objection to Randle's or Childs's out-of-court statements because both testified at trial and were subject to cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

¶34. Fourth, Rasheed argues that the State should not have been permitted to amend his indictment to correct an error, namely, that the apartment was Childs's "dwelling," not Randle's dwelling. The issue is procedurally barred because Rasheed did not object to the

15

amendment in the circuit court. *Graham v. State*, 935 So. 2d 1119, 1120-21 (¶7) (Miss. Ct. App. 2006). In addition, the amendment was proper because the correction of the name of the apartment's owner was an amendment as to form, not substance. Furthermore, Rasheed fails to articulate how the amendment prejudiced his defense in the slightest. *See Odom v. State*, 73 So. 3d 550, 552-53 (¶¶8-15) (Miss. Ct. App. 2011); *Tubby v. State*, 65 So. 3d 846, 849-51 (¶¶9-15) (Miss. Ct. App. 2010). Thus, procedural bar notwithstanding, this issue is without merit.

¶35. Fifth, Rasheed argues that his convictions for aggravated assault and burglary of a dwelling (i.e., breaking and entering with the intent to assault) violated the constitutional prohibition against double jeopardy. However, materially indistinguishable claims have been rejected in prior cases. *See generally Smith v. State*, 429 So. 2d 252, 257 (Miss. 1983) (holding that conviction for both rape and burglary of a dwelling with the intent to commit the offense of rape therein does not violate double jeopardy because the essential elements of the two offenses are different); *see also, e.g.*, *Washington v. State*, 800 So. 2d 1140, 1147 (¶26) (Miss. 2001) (same as to burglary and armed robbery). The crime of burglary was complete the moment Rasheed forcibly entered the apartment with the intent to cause bodily injury to Randle; in contrast, the crime of aggravated assault was not complete until Rasheed stabbed Randle, but that offense did not require proof that Rasheed entered the apartment with any particular intent. Rasheed committed and was convicted of two different offenses with different essential elements. The issue is without merit.

16

¶36.    Sixth, Rasheed argues that his trial counsel provided ineffective assistance because he failed to subpoena potential witnesses and failed to "properly investigate" the case. Rasheed's claim is not "based on facts fully apparent from the record." *Sandlin v. State*, 156 So. 3d 813, 819 (¶20) (Miss. 2013).  Therefore, we decline to address the claim without prejudice to its assertion in a properly filed motion for post-conviction relief. *Id.*

¶37.    Seventh, Rasheed argues that the knife that was in his possession at the time of his arrest should not have been admitted into evidence because (he says) it was not the knife used to stab Randle, because it was unduly prejudicial, and because the State failed to test the knife or establish a proper chain of custody.  At trial, the knife was admitted into evidence without objection, so these issues are all waived.  Rasheed's arguments are also without merit.  Corporal Charlie Jones of the Starkville Police Department testified that he found the knife in the same plastic bag that Sergeant Kenny Watkins took from Rasheed at the time of his arrest.  Jones also testified to the chain of custody, that he sealed the knife in a container and placed it in the evidence locker, and that there were no signs of tampering. The State was not required to submit the knife for forensic testing.  *See Flaggs v. State*, 999 So. 2d 393, 399 (¶18) (Miss. Ct. App. 2008) ("[T]he State [is not required] to test every item of evidence collected.").  And even without such testing, the jury reasonably could infer that the knife in Rasheed's possession was the same knife used to stab Randle a few blocks away a few minutes earlier.  *See Ronk v. State*, 172 So. 3d 1112, 1134 (¶49) (Miss. 2015) ("This Court has held that 'when there is evidence that a weapon could have caused an injury and

17

some connection between the defendant and the weapon exists, the weapon will be deemed relevant and admissible.'" (Quoting *Ross v. State*, 954 So. 2d 968, 993 (¶46) (Miss. 2007))). In summary, the trial court properly admitted the knife into evidence without objection.

¶38. Eighth, Rasheed argues that the evidence was insufficient to sustain his convictions. However, considering all of "the evidence in the light most favorable to the prosecution," a "rational trier of fact" could have believed Randle's and Childs's accounts of what occurred and "found the essential elements" of burglary of the dwelling and aggravated assault "beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). Therefore, the evidence was sufficient to sustain both convictions. *Id.*

## CONCLUSION

¶39. Given that Rasheed testified at trial and denied that he stabbed Randle, the trial judge did not abuse his discretion by refusing to instruct the jury on self-defense. In addition, there is ample evidence to support the convictions, and none of the other issues raised by Rasheed, either through appointed appellate counsel or in his pro se supplemental briefs, warrants reversal, a new trial, or resentencing.

¶40. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**